POLLY DANIEL'S DEVISEES *v.* HENRY DANIEL.

**Wills—Devise to Wife—Separate Estate.**

Polly Daniel was twice married and all the estate owned by her at the time of her death she derived under the will of her first husband. The second clause of the will is in these words: "After the payment of my just debts as above directed, I will and devise to my wife, Mary Cravens, an equal half of my entire estate, real, personal and mixed, and she is to have the said half of my estate hereby devised to her, to do with and dispose of as she may please."

Held, that the language used by the testator excludes the idea that it was his intention to settle the property devised to his then wife to

her separate use and benefit to the exclusion of any husband that she might thereafter have.

### Husband and Wife—Antenuptial Contracts—Separate Estate.

The language of the antenuptial agreement indicates that all the estate then owned or might afterward be acquired by the wife, whether real or personal, was intended to be embraced in the contract, but the conveyance to the trustee made for the purpose of carrying the agreement into effect, conveyed only such personal property as she then owned or might afterwards acquire.

Held, that the realty did not pass by the deed to the trustee.

### Wills—Power of Married Woman to Dispose of Separate Estate—Change from General to Special Estate by Feme Sole.

A married woman can dispose of, by will, only such estate as is secured to her separate use by deed or devise, or in the exercise of a special power to that effect. The devise from the first husband did not secure to her a separate estate in the property she acquired thereunder. Her estate was changed from general to special by her own acts, therefore she had no power to dispose of such estate by will.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

October 27, 1871.

OPINION BY JUDGE LINDSAY:

On the 5th day of March, 1860, Polly Daniel, then the wife of the appellee, Henry Daniel, without the consent of her husband, attempted to make a last will and testament disposing of her entire estate. Shortly after her death the writing was offered for probate in the Montgomery County Court, and rejected. The persons named in the paper as devisees prosecuted an appeal to the Circuit Court of that county, and upon hearing the judgment of the County Court was affirmed. From this last judgment an appeal has been prosecuted to this court.

The only question necessary for this court to determine is whether Polly Daniel had the right, under the laws of Kentucky, to dispose of her estate by will.

Section 4, Chapter 106, Revised Statutes, provides that "a married woman may, by will, dispose of any estate secured to her separate use by deed or devise, or in the exercise of a special power to that effect."

Polly Daniel was twice married, and all the estate owned by her at the time of her death she derived under the will of her first husband, William Cravens. The second clause of said will is in these words: "After the payment of my just debts, as above directed, I will and devise to my affectionate and beloved wife, Mary Cravens, an equal half of my entire estate, whether real, personal or mixed, and she is to have the said half of my estate hereby devised to her, to do with and dispose of as she may please." Except for the concluding portion of this clause, there could be no doubt but that the devisee took the absolute title to the estate devised, free from any limitation or restriction.

It is insisted for appellants that the language used by the testator must be given some effect if possible, and that if the words, "to do with and dispose of as she may please," are considered at all, they must be regarded as evidencing an intention upon the part of the testator that his wife was not only to hold the estate free from the control of any one during the time that she might remain a widow, but that the same right "to do with and dispose of" such estate was to exist as against any future husband. The difficulties in determining whether or not estates, held by married women, are separate or general, grows not so much out of uncertainty as to the rule by which courts are to be governed, as in the application to each particular case of a rule of construction about which there is no substantial difference of opinion.

The intention that the estate should be taken and held by the *feme* as separate estate, should be clearly and distinctly expressed. The husband should be excluded from the exercise of such rights over the estate of his wife as would otherwise inure to him by virtue of the marital relation, by language unequivocally manifesting such a design, or else there should exist some provision regulating the enjoyment of the estate wholly incompatible with any rights by him to control it in any manner. *Johnson v. Furgeson*, 2 *Met.* 508; *Toombs v. Stone, Ib.* 521; *Hutchinson v. James*, 1st *Duvall* 76; *Bowen v. Sebree*, 2 *Bush* 115.

The application of these principles to the language used by William Cravens seems to—is to—exclude the idea that it was his intention to settle the property devised to his then wife, to her separate use and benefit to the exclusion of any husband

that she might thereafter have. There is nothing in his will indicating that he contemplated the second marriage of his wife. He died without children. Such of his estate as he did not give to her was devised to his nephews and nieces. The magnitude of the gift to the wife evidenced a desire upon the part of the husband to deal generously with her, and we conclude that he expressed his intention that she should take the estate, devised to her to do with and dispose of as she pleased, to manifest clearly and unmistakably the fact that her title thereto was to be perfect and complete. We are aware that in one or two cases language scarcely more certain and unequivocal than that used by the testator, Cravens, has been held to award a separate estate in the wife.

In those cases, however, the *femes* were married women at the time of the execution of the deed or will under which they claimed, and in each case importance was properly attached to such fact. Here the devise was by the husband, and could not take effect until the devisee became discovert. But even if this important difference did not exist, as each case must depend to some extent upon its peculiar surroundings, we feel free in this instance to adhere closely to well-established principles, believing, as we do, that we thereby effectuate the intention of the testator.

Prior to the marriage of Mrs. Cravens to the appellee Daniel an antenuptial agreement was entered into between them, which is in these words:

"Whereas, a marriage is about to be consummated between Henry Daniel and Mrs. Polly Cravens, both of the County of Montgomery and State of Kentucky, and, whereas, the said Daniel has agreed with the said Polly that whatever property she may have, or may acquire or obtain, by purchase or otherwise, is to be subject to her exclusive use and benefit, and she is empowered to dispose of the same by deed, or by any other way that she may please, and to use it as she may desire; and to carry the above agreement into effect, it is agreed by the said Daniel and Polly of the one part, and William Ragan of the other, as trustee, that the parties of the first part do agree, and the said Polly in particular, to convey all personal property which she may now own, and all that she may acquire in any

43

way, to the said William Ragan, his heirs and assigns, forever, for the sole use and benefit of the said Polly, which is to be at her disposal; and she is to have power, with the concurrence and consent of her intended husband, to dispose of said personal property as she may deem proper at any time that she may desire; and for the further consideration of one dollar to the said Polly she does by these presents sell and convey the above personal property in manner and form aforesaid, to the said William Ragan, trustee aforesaid."

Dated June 21, 1855, and signed by Henry Daniel, and Polly Ragan. Said agreement was properly acknowledged and recorded, and the trustee, Ragan, accepted the trust.

There can be no doubt but that this instrument invested Mrs. Daniel with a separate estate in the property therein conveyed. But it is equally clea rthat as to the personal property she then had or might thereafter acquire her power of disposal, either by sale, gift or will, was made to depend upon the "concurrence and consent of her intended husband." The paper is obscure as to what the intention of the parties were as to the real estate then owned by Mrs. Daniel. It recites that "the said Daniel has agreed with the said Polly that whatever property she may have or may acquire" is to be subject to her exclusive use and benefit, and she is to have the right to dispose of it by deed, or in any other way she may please.

This language indicates that all estate she then owned or might afterwards acquire, whether real or personal, was intended to be embraced by the agreement, but the conveyance to Ragan made for the purpose of carrying this agreement into effect conveys only such personal property as she then owned or might afterwards acquire. Considering the entire paper, we regard it as a matter of great doubt as to whether a conveyance of her real estate was intended or contemplated. We are inclined to the opinion that the realty did not pass by the deed.

There is still another view of this case. Under our statute a married woman can dispose by will of only such estate as is "secured to her separate use by deed or devise, or in the exercise of a special power to that effect." Mrs. Daniel had no such special power. As we have already seen, the devise from the husband did not secure to her a separate estate in the property

she acquired thereunder. Her estate was changed from general to special estate by her own act whilst a *feme sole*. The letter of the statute empowering married women to dispose by will of certain separate estate does not embrace, such as is created by the act of the *feme* herself, and whilst we concede that the statute should receive a fair and liberal construction, it ought not by implication to be extended to any other estate than can be legitimately brought within its provisions.

The seventeenth section of Article 4, Chapter 47, Revised Statutes, as originally adopted, inhibited married women from alienating real or personal estate conveyed or devised to them for their separate use, with or without the consent of their husbands. It is this exact character of estate that they are empowered to dispose of by will. This court in construing this section held that "the estate which a *feme sole* owns in her own right by descent or purchase, and which by antenuptial contract she secures for her sole use and benefit, as her separate estate, to the exclusion of her husband, is not embraced in the provisions of the Revised Statutes, Chapter 47, Article 4, Section 17." Stites, Judge. *Bryan v. Bohannon.* M. S. S. opinion, December, 1856.

This decision seems to be conclusive as to the construction that should be placed upon the statute relating to married women's power to dispose of their separate property by will.

It does not in the slightest degree conflict with the opinion of this court delivered during this term in the case of Harris of Colorado v. Griffin, etc. Mrs. Griffin acquired her separate estate by deed from her husband, and it was held that the fact that this property was afterwards sold and reinvested did not change the nature of her estate in the property thereby acquired, although the technical words necessary to create a separate estate were omitted from the last deed.

For the reasons given we are of the opinion that Mrs. Daniel had no power to dispose of her estate by will. The judgment of the Circuit Court is therefore affirmed, and the cause remanded for such further orders as may be necessary and proper in the premises.

Judge Peters did not sit in this case.

*Apperson & Reid, for appellant.*

*Breckenridge & Buckner, Simpson, Turner, for appellee.*